## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    *Plaintiff*

v.

CHASE ALLEN,

    *Defendant.*

**Criminal No. 1:22-cr-00361-DLF**

## Reply to the Government's Sentencing Memorandum

The government asks the Court to impose a sentence for Mr. Allen that would include two weeks of incarceration. Yet scrutiny of sentencing decisions in January 6 cases thus far, as well as the facts underlying Mr. Allen's case, demonstrate that the sentence recommended by Mr. Allen and federal probation constitute a sentence that is "sufficient, but not greater than necessary" to achieve section 3553(a)'s sentencing goals and also properly implements Congress's directive to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

## I.    Introduction

The Court's task in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a) is briefed in Mr. Allen's Sentencing Memorandum. Consequently, this response will be limited to addressing a few specific points posited by the government in its Sentencing Memorandum [D.E. 38], with particular focus on the cited cases underlying the government's

argument on the need to avoid unwarranted disparity, and certain factual inaccuracies advanced by the government in its Sentencing Memorandum.

## II.    Factual Inaccuracies

To start, Mr. Allen takes full responsibility for the conduct underlying his misdemeanor conviction under 40 U.S.C. 5104(e)(2)(F) – which, as parties plea agreement, agreed upon offense conduct, and the pre-sentence report all outline, encompasses Mr. Allen's behavior, around 5 P.M on January 6th, when he joined a crowd gathered outside near the media staging area on Capital grounds, and acted in ways he deeply regrets – which include his joining the behaviors of that crowd, yelling, and stomping on abandoned media equipment - specifically, a media "Pelican" case.

However, a certain instance of Mr. Allen's behavior referenced by the government in its sentencing memorandum warrants correcting – as it is neither true not supported by the evidence in this case. Specifically, in describing Mr. Allen's conduct by the media staging area, the government describes an instance when Mr. Allen drags a camera and tripod, drops both items to the ground, and then proceeds to "stomp" on the dropped camera and tripod. *See Government's Sentencing Memorandum* at p. 6. However, a review of the government's own evidence[1] reveals the falsity of this characterization, and instead shows Mr. Allen

---

[1] The video at issue, a screen shot of which is referenced by the government in its Sentencing Memorandum as "Image 5" and is referenced with the following caption: "[A]llen dragged a camera and tripod before dropping it to the ground. Allen then stomped on the tripod and camera, as seen in Image 5", includes an open source YouTube video, https://www.youtube.com/watch?v=bRwq6F9igyw, with the relevant time mark of 0:49-0:54 minutes. *See Government's Sentencing Memorandum, p. 7.*

dragging the camera and tripod away from the center of the crowd, stepping over the camera and tripod, and then walking away.









As the above screen captures of the video show[2] - Mr. Allen neither stomped on, nor tried to destroy, the camera and tripod in question. Instead, Mr. Allen attempted to move the tripod camera away from the pile of equipment within the center of the crowd, an act he recounted[3] honestly to FBI agents during their interview of him in the weeks following the events of January 6th.

While in no way does this correction serve to minimize the unacceptable behaviors that Mr. Allen *did* engage in or diminish his accountability and acceptance of responsibility for what he *did* do on January 6th, these details matter. Further, taken on the whole (balanced along all of Mr. Allen's conduct on that day) they further demonstrate that the probationary sentence requested by Mr. Allen constitutes a sentence that is "sufficient, but not greater than necessary" to achieve section 3553(a)'s sentencing goals.

## III.   Unwarranted Sentencing Disparity

Sentencing Mr. Allen to probation without incarcerated time would not contribute to an unwarranted sentencing disparity in this case. To date, of the defendants who have resolved their cases with only a class B misdemeanor

---

[2] The open-source video is available for view on YouTube, at https://www.youtube.com/watch?v=bRwq6F9igyw  and display the behavior in question at time stamps 0:49-0:55 – (last accessed April 17, 2023).

[3] As quoted in the Government's Sentencing Memorandum, Mr. Allen, in speaking voluntarily with FBI agents in the week following the events of January 6th, stated "while [Mr. Allen] was in the media area outside of the Capitol, he "nonchalantly" tried to move stuff away from the pile of destroyed equipment. Allen stated that he pulled some cords and a tripod camera out of the area where people were trying to burn the equipment." *See Government's Sentencing Memorandum, p. 9.*

conviction under 40 U.S.C. 5104(e)(2),[4] a majority have received a probationary sentence with no incarcerated time.

The Government cites two cases to justify its requested sentence, including the case of *United States v. Katherine Staveley Schwab,* 1:21-CR-00050 (CRC) and *United States v. Eric Barber*, 1:21-CR-228 (CRC). Review of those cases, however, uncovers conduct several orders of magnitude more serious and culpable than Mr. Allen's spur-of-the-moment decision to join in the behaviors and actions of the crowd gathered outside on the Capital grounds engaged in destroying media property and equipment:

- ***United States v. Katherine Staveley Schwab**, 1:21-CR-00050-CRC (sentenced to 45 days of incarceration, 12 months of supervised release, and $500 in restitution)*: Schwab pled guilty and was sentenced to one felony count of 18 U.S.C. §1752(a)(2) – knowingly, and with intent to disrupt the orderly conduct of Government business, engaged in disorderly or disruptive conduct in a restricted building or grounds.

  The facts at Schwab's case reveal that she and others traveled to attend the "Save America" Trump rally in Washington D.C., prepared in advance for the trip, and as early as January 4, 2021, suggested to others she was traveling with that they "conceal carry" for "protection" (even though she understood it was not legal in D.C. to do so), suggested they cover their faces, accepted an offer to carry "bulletproof backpacks" to the rally, stated that she (and others) "will be in the center, most likely shit will go down", and stated that she wanted to "stand [her] ground and defend [herself] against those fascist groups[.]", and encouraged her group that "we have to stop the steal".[5]

  On the day of January 6th, Schwab joined the riot, stating:

---

[4] This estimate is based on the government's chart, referenced in their sentencing memorandum at p. 14, footnote 1, and available at https://www.justice.gov/usao-dc/capitol-breach-cases.

[5] *See* Government's Sentencing Memorandum, *United States v. Katherine Staveley Schwab,* 1:21-CR-00050 (CRC), pp. 3-21, Docket Entry 92.

"[w]e're gonna go down there. And were gonna sit in those-
we're gonna go move them outta their chairs. We're going
down there. Because we've had it. We're not here to play
around."[6]

Schwab led her group into the Capital through the East Rotunda
doors and into the Rotunda, pushing past Capital police attempting to
block entry. After being expelled from the Capital, Schwab posted on
social media, boasting about her entry into the Capital, stating "I made
my movement, I stood my ground".[7] Schwab then stood outside the
Capital building for over an hour, urging other rioters to resist police
officers attempts to disperse the crowd, encouraging rioters to "[s]tand
your ground", warning the crowd not to fear an officer's stun grenade,
and "admonish[ing] the crowd to "stand up for what's right, it's not
fuckin' right" and "we're here for a reason", further inflaming the
crowd.[8]

Finally, "[i]nstead of leaving, Schwab [and another] climbed a few
steps at the Capitol's exterior, recorded officers below who struggled to
move the crowd - while Schwab [and another] screamed at them –
calling them "traitors" and "sheep".[9] Schwab's insults to officers
included yelling at them: "You want to fuck with us, you want a
revolution, you want a fuckin' revolution, it'll happen", repeatedly
calling one officer "a fuckin' pussy", and telling a group of officers "that
they were "pathetic pieces of shit" who were "all going to burn in
hell".[10]

Schwab relocated to the media staging area and participated in
destroying media equipment and property. That evening, unrepentant,
Schwab boasted on social media that, "I stormed the Capitol", stated
"we'll show you what we did at the Associated Press", and "we will
show you what Patriots did to the Associated Press".[11] Subsequently,
when interviewed by FBI, she refused to identify a co-defendant who
entered the Capital with her and lied, stating, among other things,
that she did not condone violence "on the Capitol or on anybody else"

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

and that her presence at the Capital "had nothing to do with one side or the other."[12]

- ***United States v. Eric Barber**, 1:21-CR-228-CRC (sentenced to 45 days of imprisonment (count 4) and 7 days of imprisonment, suspended, followed by 24 months of probation (count 5):* Barber pled guilty to one misdemeanor count of 40 U.S.C. § 5104(e)(2)(G): Violent Entry and Disorderly Conduct on Capital Grounds: Parading, Demonstrating, or Picketing in a Capitol Building (Count 4) and one count of violating 22 D.C. Code § 3212: Theft II (Count 5).

    The facts of Barber's case reveal that Barber prepared for his involvement in the violence of the riot by wearing a Kevlar ballistic helmet to Washington, D.C., heard the crowd yelling "Hang Mike Pence" and saw gallows with the wood frame; followed the crowd and climbed through a broken window to enter the Capitol; he witnessed Capitol police officers being sprayed with a fire extinguisher; he witnessed destruction of windows and broken glass inside the Capitol; he penetrated the U.S. Capitol through the Rotunda and Statuary Hall, and he attempted to make it further into the Capitol where officers had barricaded or locked the door, and was captured on video inside the Capitol wearing a green army helmet, encouraging other rioters by saying "they're givin us the building", while the crowd chanted "break it down" (in reference to the locked/barricaded door inside the Capital).[13] Once inside the Capital Barber entered the hallway of the suite of offices assigned to Speaker of the House, Nancy Pelosi, and he was escorted out by police and then he walked around and entered the suite again; he posted a video he recorded outside the Capitol via Facebook, in which he stated that Capitol Police were standing around with their hands in their pockets doing nothing while windows were being broken; he stole a power station from a C-Span media station; he participated in a media interview in which he lied about not entering the Capitol; and he had a substantial criminal history, including a felony conviction for breaking and entering.[14]

---

[12] *Id.*

[13] *See* Government's Sentencing Memorandum, *United States v. Eric Barber*, 1:21-CR-228-CRC, pp. 1-2, 3-15, Docket Entry 36.

[14] *Id.*

Each of these cases featured planning and preparation for involvement in violence in advance of the riot, and both involved the defendants' forcible entry into the Capitol building, in direct conflict with law enforcement's desperate efforts to keep people out. In the case of Schwab, after being removed from the building, the defendant continued to verbally abuse and insult capitol police engaged in trying to control the crowd, and encouraged rioters to continue their fight and resistance against law enforcement. In the case of Barber, the defendant thwarted attempts of police to remove him from the suite of offices assigned to Speaker of the House, Nancy Pelosi, re-entering the suite after being removed once, stealing media equipment, encouraging other rioters to attempt to break down a door inside the Capital, and attempting to do so himself.

Not so with Mr. Allen. It is undisputed that Mr. Allen never entered the Capital building. Nor did he try to forcibly resist or impede law enforcement in any way, and he did not disobey direct law enforcement actions or orders. Mr. Allen engaged in no planning or preparation for an assault on the Capitol, let alone for violence. It is undisputed that he brought no weapons or tactical gear to the scene, nor did he yell at, or abuse, law enforcement officers in any manner. Instead, Mr. Allen traveled to Washington D.C. to document the planned protests, and then headed to the Capital building late in the afternoon on January 6, not to join the violence and melee like defendants Schwab and Barber – but to capture video footage of the January 6th attack as it unfolded in real time.

Mr. Allen was not present at the Capital on January 6th because he wanted to stop Congress from certifying the electoral college vote or support rioters as they attempted to infiltrate, or take over, the Capital building. Arriving late to the grounds, he did nothing to lead, encourage, rally, or otherwise support the crowd as rioters breached into the Capital and other restricted grounds. Afterwards, Mr. Allen did not extoll the events of January 6 on social media or laud his participation in them. Nor did he attempt to thwart the following January 6th investigation by refusing to identify other participants or lying about his entry into the Capital building or where he was present that day on Capital grounds.

In short, these factors in Mr. Allen's case point to a markedly different intent than the motivations and behaviors of those individuals sentenced to imprisonment for January 6 crimes. The sentence imposed by the Court should acknowledge these features to avoid unwarranted sentencing disparity.

## CONCLUSION

For the foregoing reasons, as well as those set forth in his initial Sentencing Memorandum, Mr. Allen respectfully requests that the Court sentence him to a term of 36 months of probation with appropriate conditions of supervision as proposed by Probation, and further requests that the Court issue a restitution order in the $500 amount agreed upon by the parties, and given Mr. Allen's indigency, decline to impose a fine.

Respectfully submitted,

Mr. Chase Allen,
By his attorney,

*/s/ Forest O'Neill-Greenberg*
Forest O'Neill-Greenberg
Massachusetts BBO # 674760
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 17, 2023.

*/s/ Forest O'Neill-Greenberg*
Forest O'Neill-Greenberg